AMERICAN ROLLING MILL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13044.    Promulgated December 4, 1928.

*Paul Armitage, Esq.*, for the petitioner.
*Clark T. Brown, Esq.*, for the respondent.

534

## OPINION.

MILLIKEN : The first and major question presented in this proceeding is whether the subscriptions made by petitioner in 1920 to the Civic Fund of the City of Middletown in the total amount of $360,000 are deductible from its gross income under the provisions of section 234 (a) (1) of the Revenue Act of 1918. The material provision of that section is—

SEC. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity.

It is to be noted that the above provision includes rentals and, with certain restrictions, salaries, both of which are business expenses in a business and an accounting sense. Paragraphs (2) and (3) of subdivision (a) of the same section provide, with certain limitations, for the deduction of interest and taxes, both of which are universally deemed business expenses and for the deduction of

which there was no necessity of particular specifications if they are included in the statutory concept of " ordinary and necessary business expenses." We further find that section 214 (a) (1) of the same Act permits an individual taxpayer to take precisely the same deductions that are permitted to a corporation by section 234 (a) (1). Further light is thrown on this statutory concept by the provisions of section 214 (a) (11), which reads:

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

\*      \*      \*      \*      \*      \*      \*

(11) Contributions or gifts made within the taxable year to corporations organized and operated exclusively for religious, charitable, scientific, or educational purposes, or for the prevention of cruelty to children or animals, no' part of the net earnings of which inures to the benefit of any private stockholder or individual, or to the special fund for vocational rehabilitation authorized by section 7 of the Vocational Rehabilitation Act, to an amount not in excess of 15 per centum of the taxpayer's net income as computed without the benefit of this paragraph. Such contributions or gifts shall be allowable as deductions only if verified under rules and regulations prescribed by the Commissioner, with the approval of the Secretary. In the case of a nonresident alien individual this deduction shall be allowed only as to contributions or gifts made to domestic corporations, or to such vocational rehabilitation fund.

No provision similar to the above is to be found in section 234. Since the right to take a deduction must be found in the words of the statute it necessarily follows that a corporation is not entitled to the deduction provided by section 214 (a) (11). That such was the clear intent of Congress is further shown by the fact that while the revenue bill, which ultimately became the Revenue Act of 1918, was under consideration, an amendment was offered to the effect that corporations might take deductions of contributions as in the case of individuals and that this amendment was defeated. See 31 Op. Atty. Gen. 617, and *Consolidated Gas, Electric Light & Power Co.* v. *United States,* 65 Ct. Cls. 252; 278 U. S. 612. When the bill resulting in the Revenue Act of 1921 was under consideration the House Bill contained a provision extending to corporations the same right of deduction of contributions that was extended to individual taxpayers, with the limitation that the amount of deduction should not exceed 5 per cent of net income. The Senate struck out this provision (Con. Rep. 486, 67th Cong., 1st sess., p. 36), and from that date to this corporations have been denied the right to take such deductions. Since paragraphs (1) of subdivision (a) of section 214 and section 234 are precisely the same in effect and almost precisely the same in verbiage, it follows that they must be given the same meaning—that is, any expense which would not be allowed to an individual under section 214 (a) (1) is not allowable to a corporation

under section 234 (a) (1) and that the reverse is equally true. It is obvious, however, that the insertion of paragraph (11) of subdivision (a) in section 214 and the absence of any such provision in section 234, shows an intention on the part of Congress that the term "ordinary and necessary business expenses," when applied to voluntary contributions, should be given a much more limited and restricted meaning than if that paragraph did not appear in the statute.

Counsel for petitioner has called our attention to numerous decisions by the Board wherein we have permitted deductions of contributions as business expenses. The deductibility of contributions depends largely on the facts of each particular case. The primary purpose of the Civic Fund Campaign was to secure sufficient capital with which to erect certain buildings in Middletown, and which were thereafter to be maintained and supported by further annual contributions. The hospital, the community building and the Y. M. C. A., finally erected and completed subsequent to the year 1920, were to be structures which would serve the public for years to come. The same is to a less degree true of many of the other beneficiaries. Petitioner's contributions fell due over a period of nearly three years and the last payment was not in fact made until the latter part of 1923. There is also the serious question of whether the $360,000 in question can be said to be attributable to the process of earning income during the year 1920, so that the entire amount can be charged to this one particular year, with benefits to accrue in later years, without resulting in a distortion of income for that particular year.

One can not say what direct benefit flowed to petitioner from its contributions to the Civic Fund. It is no doubt true that any contribution to a local charitable organization or anything which benefits the entire community does, in some degree, benefit the contributing corporation. It is likewise no doubt true that the contributions of petitioner were commendable and should be encouraged but their deductibility from income must be provided for by Congress. We can not supply the legislative authority therefor.

This brings us to the question of whether or not the contributions totaling $360,000 made by petitioner to the City of Middletown, were "ordinary and necessary business expenses" within the meaning of that term as used in the Revenue Act. While petitioner contributed to that fund what appears to be a large amount, both absolutely and relatively, the fact remains that it did not contribute more in proportion to its ability to pay than the others contributed. The amount of $400,000 was raised by popular subscription outside of the industries. Every citizen and industry of Middletown share in the benefits to be derived from the expenditure of the fund. The benefits which petitioner derived were of the same character as those which flowed to

every other corporation and citizen of the community. While we have no doubt that petitioner did derive benefit from these civic improvements, we are of opinion that the benefit was indirect rather than direct. The Civic Fund appears to have been nothing more nor less than a community fund or foundation, similar to the funds mentioned in section 214 (a) (11) of the Revenue Act of 1921, and in similar provisions of subsequent revenue acts, contributions to which are deductible, subject to the limitations therein provided, by individual taxpayers but not by corporations.

While the contributions may have been business expenses in a business and accounting sense, it is our opinion that they do not fall within the classification " ordinary and necessary expenses " as that phrase is used in section 234 of the Revenue Act of 1918.

Petitioner in its petition seeks to take a deduction in the amount of $24,000 paid to the City of Middletown, Ohio, and states as the ground for its contention that one of its plants was erected in 1911 outside of the corporate limits of the city; and that one of the inducements offered the company to build its plant just outside of the corporate limits was a promise by the city authorities that the plant site would not be taken into the city and the taxpayer thus escaped liability for tax. It is further alleged that the city authorities became dissatisfied with the agreement and sought to incorporate the plant within the city limits; that after a controversy between petitioner and the municipal authorities, and to eliminate the discussion, petitioner paid the City of Middletown $24,000 and thus succeeded in keeping its plant outside of the city limits. No proof was taken which substantiates this allegation. After stating that there was such a controversy, petitioner's president was asked:

Q. Was it in connection with that discussion, that you made this payment of $24,000 for the deficit of the city offices?

A. Well, it might have been, but I couldn't remember that far back as to whether it was more than just one of the things considered. I don't know. That might have been a fact. I couldn't tell you now. I know what the general argument was.

Q. Was that payment made in 1920?

A. Yes; it was made at the time.

Q. How was the $24,000 fixed—how was the amount of it fixed?

A. Like everything else; it was our proportion of the total amount to be raised.

By Mr. Brown:

Q. You mean to meet a deficit of the city?

A. Yes.

By Mr. Armitage:

Q. Did the other industries contribute to it?

A. I think they did. I am not sure as to that. That was something we agreed to pay to help out that difficulty.

On recross-examination the same witness testified:

Q. And the facts in regard to this $24,000 payment were that the city was going back on that agreement, or wanted to back out of it? Wasn't that so?

A. No, the $24,000 represented our part of the deficit that had to be helped out, and the argument about the plant coming in or out was one that was more or less on the boards for a good many years.

Taking this testimony in connection with the allegations of petitioner, we are left in doubt as to what was the necessity for or the purpose of this contribution, much less can we say whether it was of the nature of an ordinary and necessary business expense.

Reviewed by the Board.

*Judgment for the respondent.*